| | | |
|---|---|---|
| CHARLES HAMILTON, | : | |
| | : | Civ. No. 16-5705 (PGS) |
| Petitioner, | : | |
| v. | : | **MEMORANDUM AND ORDER** |
| | : | |
| PATRICK NOGAN, et al., | : | |
| | : | |
| Respondents. | : | |

**PETER G. SHERIDAN, U.S.D.J.**

## I.  INTRODUCTION

Petitioner Charles Hamilton ("Petitioner" or "Hamilton"), a convicted criminal in the State of New Jersey, has filed a Petition for a Writ of Habeas Corpus (the "Petition"), pursuant to 28 U.S.C. § 2254.  (ECF Nos. 1, 9.)   Having considered the parties' submissions and the relevant records of this case, the Petition will be denied and a certificate of appealability will not issue.

## II.  BACKGROUND

On March 14, 2005, Hamilton was charged in a multi-count, multi-defendant indictment with first-degree conspiracy to commit racketeering. The Counts are as follows:

Count One:   First-degree conspiracy to commit racketeering (N.J. Stat. Ann. §§ 2C:41-2(d), 2C:5-2)

Count Two:   First-degree racketeering (N.J. Stat. Ann. § 2C:41-2;

Count Three:  First-degree leader of a narcotics trafficking network (N.J. Stat. Ann. § 2C:35-3)
Count Four:   First-degree distribution of a controlled dangerous substance (N.J. Stat. Ann. §§ 2C:35-5(a)(1), (b)(1), 2C:2-6;

Count Six:    Third-degree distribution of a controlled dangerous substance on or within 1000 feet of school property (N.J. Stat. Ann. §§ 2C:35-7, 2C:2-6;

Count Eight:    Second-degree possession with intent to distribute a controlled dangerous substance (N.J. Stat. Ann. §§ 2C:35-5(a)(1), (b)(2), 2C:2-6)

Count Nine:    Third-degree possession with intent to distribute a controlled dangerous substance, (N.J. Stat. Ann. §§ 2C:35-5(a)(1), (b)(3), 2C:2-6;

Counts Ten, Eleven, Twelve and Thirteen:    Second-degree possession of weapons during the commission of certain crimes (N.J. Stat. Ann. §§ 2C:35-5, 2C:39-4.1(a), 2C:2-6)

Count Fourteen:    Second-degree possession with intent to distribute a controlled dangerous substance (N.J. Stat. Ann. § 2C:35-5(a)(1), (b)(2), 2C:2-6;

Counts Fifteen, Sixteen and Seventeen:    Second-degree possession of weapons during the commission of certain crimes (N.J. Stat. Ann. §§ 2C:35-5(a)(1), (b)(3), 2C:2-6;

Counts Twenty, Twenty-One, Twenty-Two, Twenty-Three, Twenty-Four, and Twenty-Five:    Fourth-degree unlawful purchase of a handgun (N.J. Stat. Ann. §§ 2C:58-3, 2C:39-10(a), 2C:2-6);

Counts Twenty-Seven and Twenty-Eight: Second-degree money laundering (N.J. Stat. Ann. § 2C:21-25(a))

(ECF No. 34-2.)

The Superior Court of New Jersey, Law Division described the facts underlying Hamilton's conviction, as adduced at a jury trial, as follows:

> The investigation started in April of 2004 when [Investigator Brian Kiely] received information from a confidential informant that Larry Willis was selling heroin. A wiretap on Mr. Willis's phone revealed that his supplier was "Mark" who was later identified as Robert Cashwell. A wiretap was placed on Mr. Cashwell's phone to determine who else he supplied heroin to and who supplied heroin to him. Through the wiretap, the police discovered that Mr. Cashwell supplied heroin to Akeem Blue, Coby Welch, Larry Willis, and Jameel Alford. The individuals were identified through surveillance. The police would intercept the calls, listen to the individuals arrange meetings, and set up surveillance where the meeting was to take place.
>
> By setting up surveillances at meetings, investigators learned that the petitioner was sometimes referred to as "Black." On cross,

> Investigator Kiely indicated that the petitioner never referred to himself as Black, and no one called him Black directly. However, people referred to him as Black when speaking about him. Investigator Kiely further indicated that he identified the petitioner's voice and was able to determine that he was recorded during the wiretap by making conversation with him after his arrest and by asking "pedigree questions" during processing.
>
> . . .
>
> On June 24, 2004, Mr. Cashwell and the defendant [Hamilton] arranged to meet at 413 Dodd Street. Mr. Cashwell and Shameekah Melvin went to 413 Dodd Street in a blue Infiniti. Mr. Cashwell exited 413 Dodd Street carrying a black bag, which he put into the trunk of the Infiniti.
>
> Mr. Cashwell then met with Mr. Willis. He then met Mr. Blue at a 7-11 on Broad Street in Hamilton, where they were both arrested. In the trunk of Mr. Cashwell's car, police found heroin and $4,670 in cash. Over $40,000 was seized from Mr. Blue's car.[1]

(ECF No. 34-14, at 94–96 (footnotes omitted).) Following the arrests at the Hamilton 7-Eleven, law enforcement executed search warrants at several properties based on information received via the wire taps. (*Id.* at 96.) Notably, law enforcement executed a search warrant at two apartments of 413 Dodd Street in West Orange, New Jersey where they found 50 bricks of heroin, $84,455 in cash, and identification cards for Hamilton. (*Id.*) Law enforcement also intercepted a call at 2:00 a.m. on June 25, 2004 between Hamilton and Haseezah Harris, in which Hamilton "told Ms. Harris the building was going to be raided" and instructed her to "put . . . them hammers in the bag and . . . put dem outside . . . the back door." (*Id.* at 97–98.) When law enforcement searched 12 Hawthorne Place in East Orange, "investigators located heroin and three loaded semi-automatic

---

[1]     Hamilton was not present at the 7-Eleven in Hamilton, New Jersey on June 25, 2004, but was charged in the indictment and convicted by the jury as an accomplice to Cashwell and Melvin. (*See* ECF No. 34-2, at 15; ECF No. 34-44, at 40–43.)

handguns in a bag underneath the backdoor steps." (*Id.*)

Hamilton denied any involvement in the distribution of heroin and several of his codefendants testified on his behalf. Cashwell testified that Hamilton "owns a construction business" and "that he did not work for the petitioner in the construction business or in any illegal enterprise." (*Id.* at 99.) Cashwell also testified that Hamilton did not go by the alias "Black," but his brother Daron Hamilton, who was also a codefendant in this matter, did. (*Id.*) Nevertheless, on cross-examination, Cashwell identified Hamilton's voice on several recorded phone calls and admitted that a call between him and Hamilton did discuss "a heroin customer and a brand of heroin." (*Id.* at 99–100.) That call arranged for the sale of heroin to Willis and Blue on June 24, 2004. (ECF No. 34-43, at 33–34.)

A jury convicted Hamilton of Counts One, Two, Four, Fifteen, Sixteen, Seventeen, and Twenty-Seven. (ECF No. 34-3, at 1.) The jury was unable to reach a unanimous on the remaining counts. (ECF No. 34-48, at 5–6.)

While the jury was deliberating, Hamilton fled the jurisdiction. (*See* ECF No. 34-45, at 23–24, 27.) Hamilton was apprehended approximately one year later in Georgia and was returned to New Jersey for sentencing. (ECF No. 34-52, at 4.) A sentencing hearing was held on February 21, 2008, at which time the trial court granted the State's motion for extended term sentencing. (ECF No. 34-3, at 3.) Hamilton was ultimately sentenced to life in prison with a twenty-five-year period of parole ineligibility on Count Four; a consecutive term of fifteen years with a five-year period of parole ineligibility on Counts One and Two; three concurrent ten-year terms on Counts Fifteen, Sixteen, and Seventeen; and a concurrent five-year term on Count Twenty-Seven. (*Id.* at 1.)

Hamilton appealed his conviction and sentence to the New Jersey Superior Court,

Appellate Division. (ECF No. 34-4.) On June 29, 2010, in an unpublished, per curiam opinion, the Appellate Division affirmed Hamilton's conviction and sentence. (ECF No. 34-6.) Hamilton filed a motion for reconsideration of the Appellate Division's decision, which was denied on July 27, 2010. (ECF No. 34-8.) Hamilton thereafter filed a petition for certification to the New Jersey Supreme Court, which was denied on January 7, 2011. (ECF No. 34-12.)

On February 18, 2011, Hamilton filed his first petition for post-conviction relief (the "First PCR") in the Superior Court of New Jersey, Law Division. (ECF No. 34-13, at 80–88.) On January 23, 2013, the Superior Court denied the First PCR, finding that certain claims were procedurally barred under the New Jersey Court Rules and that the claims otherwise lacked merit. (ECF No. 34-14, at 91–120.) On February 22, 2013, Hamilton appealed. (*Id.* at 122.)

While Hamilton's appeal of the First PCR was pending, on December 30, 2013, Hamilton filed a second petition for post-conviction relief (the "Second PCR"). (ECF No. 34-21, at 25.) On January 30, 2014, the Second PCR was denied as procedurally barred by the Superior Court. (*Id.* at 24.) Hamilton appealed that denial to the Appellate Division. (ECF No. 34-21, at 22–23.) While the appeal was pending, Hamilton filed a motion for a limited remand to the Second PCR court for it to consider alleged newly discovered evidence, which was denied. (ECF Nos. 34-23, 25.)

On January 26, 2016, in a consolidated opinion, the Appellate Division denied Hamilton's appeals of both his First and Second PCRs, affirming the Superior Court's determination that the claims raised in both petitions were procedurally barred under the New Jersey Court Rules. (ECF No. 34-26.) On February 19, 2016, Hamilton filed a petition for certification of his First and Second PCRs with the New Jersey Supreme Court. (ECF No. 34-27.) The New Jersey Supreme Court denied certification on July 11, 2016. (ECF No. 34-29.)

While the appeals of Hamilton's First and Second PCRs were pending in the Appellate Division, Hamilton filed a motion to correct an illegal sentence in the Superior Court of New Jersey, Law Division, arguing that the State's motion for an extended term sentence was time-barred and should have been denied. (ECF No. 26-8, at 4–12.) On September 4, 2014, Hamilton's motion was denied. (ECF No. 26-9, at 2.) Hamilton thereafter moved for reconsideration of that denial, (*Id.* at 4), which was denied on March 31, 2015, (ECF No. 26-10). Hamilton appealed that decision, which was affirmed by the Appellate Division on September 1, 2016. (ECF No. 34-33.) The New Jersey Supreme Court denied certification on January 20, 2017. (ECF No. 34-36.)

On or about September 19, 2016, Hamilton, acting pro se, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) On October 20, 2016, Hamilton's habeas action was administratively terminated for failure to file an account certification in support of his application to proceed *in forma pauperis*. (ECF No. 2.) Hamilton refiled his application to proceed *in forma pauperis*, which was denied by this Court on March 1, 2017. (ECF No. 6.) Following receipt of the filing fee from Hamilton, this Court reopened the matter on May 26, 2017. (ECF No. 9.)

In the Petition, Hamilton raises the following claims for relief:

> Ground One: The trial court deprived Mr. Hamilton of his Constitutional Right to Counsel of [his] Choice.
>
> Ground Two: The trial court improperly instructed the jury concerning the elements of possession of a firearm while committing certain drug crimes, which constituted an amendment to counts 15, 16, and 17 of the indictment.
>
> Ground Three: The trial court improperly charged the jury as to count four, in violation of Petitioner's rights to due process and a fair trial in violation of U.S. Const. Amends. V, VI, XIV.
>
> Ground Four: There is a Reasonable Probability That, but for Trial and Appellate Counsel's Deficient Performance in Five Critical

Aspects, the Outcome Would Have been Different: (1) His failure to make sure that the alleged alias name "Black" was redacted off of th[e] recorded voice transcripts[;] (2) His failure to object to jury instructions that Constructively Amended the indictment concerning count's [*sic*] 15, 16, and 17[;] (3) His failure to object to jury instructions that Constructively Amended this indictment concerning count four[;] (4) His failure to object permitted the Trial to be Tainted by highly prejudicial other crimes evidence, as to count 4[; and] (5) Sentencing, appellate and 1st PCR counsel's failure to notice and challenge the time barred extended term motion.

(ECF No. 1, at 25–30.) While Hamilton acted pro se in filing the Petition, he later retained counsel, who filed a brief on his behalf on or about January 13, 2018. (ECF No. 25-1.) Counsel's brief only pertains to Ground One of the Petition—that Hamilton was denied his Sixth Amendment right to choose his own counsel. (*See id.*) Respondents filed an Answer to the Petition, in which they argue that certain of Hamilton's claims are procedurally defaulted and that Hamilton has failed to show the denial of any federal constitutional right. (ECF No. 33.) Hamilton filed a pro se Reply to the Answer. (ECF No. 35.)[2]

## III.   LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

"[Section] 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170

---

[2]   Petitioner has additionally filed a supplemental letter requesting that this Court consider a recent decision of the New Jersey Superior Court, Appellate Division in support of his claim that he was denied his Sixth Amendment right to choose his own counsel. (ECF No. 36.) Because the case presented by Petitioner discusses and applies only New Jersey law regarding the right to choose one's own counsel, it is inapplicable to this federal habeas action.

(2011); *Glenn v. Wynder*, 743 F.3d 402, 406 (3d Cir. 2014). Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." *Id.*

A federal court's authority to grant habeas relief is further limited when a state court has adjudicated petitioner's federal claim on the merits. *See* 28 U.S.C. § 2254(d). If a claim has been adjudicated on the merits in state court proceedings, this Court "has no authority to issue the writ of habeas corpus unless [the state court's] decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 567 U.S. 37, 40–41 (2012) (quoting 28 U.S.C. § 2254(d)). However, when "the state court has not reached the merits of a claim thereafter presented to a federal habeas court, the deferential standards provided by the AEDPA . . . do not apply." *Lewis*, 281 F.3d at 100 (quoting *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001)).

When a claim has been adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d); *see also Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2012). A state-court decision involves an "unreasonable application" of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme

8

Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 407 (2000). Federal courts must follow a highly deferential standard when evaluating, and thus give the benefit of the doubt to state court decisions. *See Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011); *Eley v. Erickson*, 712 F.3d 837, 845 (3d Cir. 2013). A state court decision is based on an unreasonable determination of the facts only if the state court's factual findings are objectively unreasonable in light of the evidence presented in the state-court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003). Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e); *see Rice v. Collins*, 546 U.S. 333, 339 (2006) (petitioner bears the burden of rebutting presumption by clear and convincing evidence); *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001) (factual determinations of state trial and appellate courts are presumed to be correct).

## IV. DISCUSSION

### a. Ground One – Denial of Right to Choose Counsel

Hamilton argues that he was denied his constitutional right to choose his own counsel under the Sixth Amendment because the trial court denied his request to substitute his counsel and denied an adjournment to permit him to seek new counsel shortly before trial.[3]

---

[3] In the brief submitted by counsel, which was submitted nearly a year after Petitioner's habeas petitioner was filed, counsel additionally contends that appellate and PCR counsels were ineffective in presenting this claim to the state court. Specifically, habeas counsel asserts that appellate counsel was ineffective "for having failing to obtain and review all of the trial transcripts although he was fully aware they existed," (ECF No. 20-1, at 27); and PCR counsel was ineffective for failing to raise "ineffectiveness of appellate counsel for failing to submit those transcripts in support of his choice of counsel argument on direct appeal," (*Id.* at 28). Petitioner did not seek leave to amend his Petition to bring these new claims and, therefore, the Court will not consider these ineffective assistance of counsel claims. *Accord Roland v. United States*, No. 14-4722, 2018 WL 2134039, at *4 n.4 (D.N.J. May 9, 2018).

It appears that shortly after his arrest, Hamilton retained Maria Noto as his defense counsel. (ECF No. 26-12, at 4–5.) At the time Hamilton retained Ms. Noto as counsel, she was a solo practitioner. (*See id.*) However, in January 2006, Edward Washburne joined her firm as a partner and began assisting with her caseload. (*See* ECF No. 34-38, at 3.) Ms. Noto thereafter was out of the office for medical reasons. Upon her return to work, she shared some of her cases with Mr. Washburne "because it was impossible at that point to catch up with everything that had to be done." (*Id.*) Hamilton's case was among the files with which Mr. Washburne apparently assisted Ms. Noto. (*Id.*) Mr. Washburne attended several court hearings on Hamilton's case with Ms. Noto and met with Hamilton to discuss his defense. (*Id.*)[4]

On the first day of jury selection, Hamilton alerted the trial court that he was dissatisfied with his counsel, explaining:

> I had discrepancies about my attorney for the longest. She handled my case, didn't investigate it properly, and just throw him on it three months ago. I don't have nothing against saying he's not a good lawyer, but she just throws him on it three months ago. I didn't pay him. He wasn't even in the firm when I paid her my money. It's a lot of things that wasn't done. She's not interested in my case. She only been down here like four times out of two years. She only been down here personally like four times. I couldn't say anything because I sat in the second row, and the only time I was spoken to was when it was time for me to get another court date. . . . But I just want proper representation. This is my life. These ain't no small charge that I have.

(ECF No. 34-37, at 3.) The trial court questioned Hamilton's dissatisfaction with his legal representation as "every motion that could have been filed was filed." (*Id.*) Then, to the extent Hamilton sought an adjournment of the pending trial date to obtain new counsel, the trial court

---

[4] Included in these hearings was an August 30, 2006 status conference in which the trial court indicated that Mr. Washburne would not be trying Petitioner's case. (ECF No. 26-13, at 4 ("Mr. Washburne, how long do you think your case will be? I know you won't be trying it . . . .").)

denied an adjournment because "it's simply not practical, and there is no reason to adjourn the case at this point." (*Id.* at 4.)

Nevertheless, a week later, Ms. Noto appeared before the trial court to place on the record the history of her representation of Hamilton. (ECF No. 34-38, at 2–3.) Ms. Noto stated that in April 2006, Ms. Noto told Hamilton she "would like to have Mr. Washburne take over as his trial counsel and asked if he would have an objection." (*Id.* at 3.) According to Ms. Noto, Hamilton did not object. (*Id.*) After April 2006, Mr. Washburne handled all court appearances in this matter and continued to meet with Hamilton in preparation for trial. (*Id.* at 3–4.) In response to Ms. Noto's explanation, Hamilton denied that he had not been informed that Mr. Washburne would be taking over his representation and thought that Mr. Washburne would only be "assisting" Ms. Noto. (*Id.* at 4.)

The trial court denied Hamilton's request to substitute his counsel because it was "concern[ed] that [he was] looking for a way to adjourn this trial." (*Id.* at 6.) The trial court explained

> Ms. Noto is an officer of the Court. She has an obligation to advise the Court honestly of what has transpired. I'm satisfied that you were aware and agreed to Mr. Washburne taking over your representation. If he were an attorney out of school a year or two, that would be a difference situation, but he obviously has about the same amount of experience as Ms. Noto has.
>
> . . .
>
> So I have no reason to believe that Mr. Hamilton will not have very professional and aggressive representation, and I accept your representations that Mr. Hamilton was made aware of this, and that you will be available to, based on your prior involvement in the case on motions to the extent that that's relevant at all, to be able for consultation with Mr. Washburne. He's represented he is prepared to go to trial, and he's been involved in this case since April for a period of five months, so we're going to proceed with Mr. Washburne representing Mr. Hamilton, and I have every reason to

believe, Mr. Hamilton, that you will receive very fine representation.

(*Id.*)

Hamilton raised this claim on direct appeal, where it was denied by the Appellate Division. The Appellate Division found that "the trial court struck the proper balance" in weighing its right to control its calendar and Hamilton's constitutional right to choose his own counsel. (ECF No. 34-6, at 8.) As such, the denial of Hamilton's request for an adjournment was not an abuse of the trial court's discretion nor did it cause Hamilton "a manifest wrong or injury." (*Id.*)

The Sixth Amendment of the Constitution guarantees criminal defendants the right "to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Supreme Court has "recognized that the purpose of providing assistance of counsel 'is simply to ensure that criminal defendants receive a fair trial' and that in evaluating Sixth Amendment claims, 'the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such." *Wheat v. United States*, 486 U.S. 153, 159 (1988) (citation omitted) (first quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984); then quoting *United States v. Chronic*, 466 U.S. 648, 657 n.21 (1984)). The Supreme Court has further explained that "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Id.* However, the right to choose one's counsel is not "derived from the Sixth Amendment's purpose of ensuring a fair trial" and has instead "been regarded as the root meaning of the constitutional guarantee." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147–48 (2006). Thus, an accused is deprived of his right to choose his counsel where he "is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received."

*Id.* at 148. Such an erroneous deprivation of the right to choose one's counsel is a structural error. *Id.* at 150.

However, the right to choose one's own counsel is not absolute and "is circumscribed in several important respects," including requiring that an accused's chosen counsel is a member of the bar, consents to the representation, and the accused can afford to pay his counsel. *See Wheat*, 486 U.S. at 159. Courts also have "wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." *Gonzalez-Lopez*, 548 U.S. at 152 (citation omitted). Indeed, "when a criminal defendant first makes a trial court aware of dissatisfaction with counsel on the eve of trial, it may not be a denial of the right to counsel of choice for the trial court to deny a continuance for the purposes of substituting or finding new counsel." *Williams v. Hendricks*, No. 00-4795, 2009 WL 2169230, at *4 (D.N.J. July 21, 2009); *see also Miller v. Blackletter*, 525 F.3d 890, 894–98 (9th Cir. 2008) (denying habeas claim for deprivation of a petitioner's right to choose his own counsel where the petitioner waited until the eve of trial to express dissatisfaction with his attorney); *United States v. Lyles*, 223 F. App'x 499, 502–03 (7th Cir. 2007) (finding that district court did not abuse its discretion in denying a request for a continuance to seek new counsel where the request was not made until the trial was scheduled to begin). Nevertheless, "a trial court may not arbitrarily deny a defendant's right to counsel of choice" and "some sort of fact finding or hearing" is required. *United States v. Voigt*, 89 F.3d 1050, 1055–56 (3d Cir. 1996); *see also Fuller v. Diesslin*, 868 F.2d 604, 609–12 (3d Cir. 1989).

The Appellate Division's decision was neither contrary to this established federal precedent nor an unreasonable application of that precedent. A hearing was held to determine the veracity of Hamilton's claim that he was unaware Mr. Washburne would act as his trial counsel. After hearing the statements of Hamilton and Ms. Noto, the trial court found, on the record, that

Hamilton was aware that Mr. Washburne would represent him at trial as Ms. Noto's partner. Even if this Court were to credit Hamilton's claim that he believed Ms. Noto would represent him at trial, he offers no reason why he delayed presenting this issue to the trial court until the first day of trial. Under these circumstances, the trial court's decision was neither unreasonable or arbitrary where trial was set to begin and Mr. Washburne was prepared to proceed. *Accord Miller*, 525 F.3d at 898 (concluding denial of Hamilton's motion to substitute counsel was not "the type of unreasoning and arbitrary insistence on expeditiousness that . . . federal law prohibits"). Based on the Court's review of the record, there is little support for Hamilton's contention that the trial court committed any constitutional error in proceeding to trial with Mr. Washburne as Hamilton's counsel. Accordingly, Hamilton is not entitled to relief on this claim.

### b. Ground Two – Erroneous Jury Instruction on Counts Fifteen, Sixteen, and Seventeen

In Ground Two, Hamilton contends that the trial court erred in instructing the jury regarding the elements of possession of a firearm while committing certain controlled dangerous substance ("CDS") offenses in its charge to the jury on Counts Fifteen, Sixteen, and Seventeen of the indictment. Hamilton argues that the trial court specifically erred in instructing the jury that for it to find Hamilton guilty of these offenses, it needed to find that "at the time alleged in the Indictment, that is, June 25th, 2004, the defendant was in the course of committing, attempting to commit, or conspiring to commit *distribution of heroin* or possession of heroin with the intent to distribute." (ECF No. 34-44, at 57–58 (emphasis added).) This was error, Hamilton contends, because the predicate offense for Counts Fifteen, Sixteen, and Seventeen was possession of heroin with the intent to distribute, not distribution of heroin. Hamilton asserts that the Court's error constituted a constructive amendment of the indictment because it "broadened the elements for which the jury was to consider in order to convict Hamilton." (ECF No. 4, at 28.)

14

Counts Fifteen, Sixteen, and Seventeen of the indictment charged Hamilton with three counts of possession of a weapon during the commission of a CDS-related offense. (ECF No. 34-2, at 26–28.) The CDS offense underlying these charges was set forth in Count Fourteen of the indictment for possession of heroin with intent to distribute. (*Id.* at 25.) The offenses occurred in East Orange, New Jersey on or about June 25, 2004. (*Id.*) In instructing the jury on Counts Fifteen, Sixteen, and Seventeen, the trial court stated, in relevant part:

> Count 15 charges the defendant with possession of a weapon during the commission of certain crimes. . . .
>
> For you to find the defendant guilty of this charge contained in Count 15, the State must prove beyond a reasonable doubt the following three elements:
>
> > 1. That there was a firearm, S-37, in evidence, a Ruger semi-automatic pistol, serial number 303-00503, seized at 12 Hawthorne Place in East Orange;
> >
> > 2. That the defendant possessed the firearm;
> >
> > 3. That at the time alleged in the Indictment, that is, June 25th, 2004, the defendant was *in the course of committing, attempting to commit, or conspiring to commit distribution of heroin or possession of heroin with the intent to distribute.*
>
> . . .
>
> Now, as to Counts 16 and 17, each charges the defendant with the same offense, on the same date, at the same location. The only difference, again, is the specific weapon the defendant is alleged to have possessed. Therefore, my instructions regarding the elements of this offense should be applied separately as to Counts 16 and 17 as well in their entirety.
>
> As to Count 16, the elements the State must prove beyond a reasonable doubt are:
>
> > 1. That there was a weapon, S-38 in evidence, an Uzi America semi-automatic pistol, serial number 97307267, seized at 12 Hawthorne Place in East

Orange;

2. That this defendant possessed the firearm as I have defined that term for you; and,

3. That at the time alleged in the Indictment, the defendant *was in the course of committing, attempting to commit or conspiring to commit the offense of distribution of heroin or possession of heroin with the intent to distribute.*

As to Count 17, the three elements are:

1. That there was a firearm, S-39 in evidence, a Beretta, model 96, semi-automatic pistol, serial BER 036835M, likewise seized at 12 Hawthorne Place in East Orange;

2. That defendant possessed the firearm;

3. That at the time alleged, the defendant was *in the course of committing, attempting to commit, or conspiring to commit distribution of heroin, or possession of heroin with the intent to distribute.*

(ECF No. 34-44, at 57–58 (emphasis added).)

Hamilton raised this claim on direct appeal. The Appellate Division agreed that the jury instructions were incorrect but determined that the error was not "clearly capable of producing an unjust result" because "there was no evidential basis for the jury to find defendant guilty based on distribution." (ECF No. 34-6, at 10.) Moreover, the Appellate Division observed that

The State did not present any evidence to establish that defendant was engaged in the distribution of heroin at 12 Hawthorne Place on June 25, 2004, when the weapons were found there. Furthermore, the court's instruction on count fourteen made clear that the charge pertained to the possession of CDS with intent to distribute, *not* the distribution of CDS.

(*Id.* at 11–12 (emphasis in original).)

First, to the extent Hamilton brings a claim for improper amendment of the indictment at

trial, it is not cognizable on habeas review. The Third Circuit has explained that "[a]n indictment is constructively amended when evidence, arguments, or the [trial] court's jury instructions effectively 'amend[s] the indictment by broadening the possible bases for conviction from that which appeared in the indictment.'" *United States v. McKee*, 506 F.3d 225, 229 (3d Cir. 2007) (second alteration in original) (quoting *United States v. Lee*, 359 F.3d 194, 208 (3d Cir. 2004)). However, because the Fifth Amendment's guarantee of indictment by grand jury does not apply to state prosecutions, "the legality of an amendment to an indictment is primarily a matter of state law." *United States ex rel. Wojtycha v. Hopkins*, 517 F.2d 420, 425 (3d Cir. 1975); *Johnson v. Hines*, 83 F. Supp. 3d 554, 560 (D. Del. 2015); *see also Player v. Artus*, No. 06-2764, 2007 WL 708793, at *7 (E.D.N.Y. Mar. 6, 2007) (finding that habeas claim for constructive amendment of a state indictment "does not present a federal constitutional question" (citing *Lanfranco v. Murray*, 313 F.3d 112, 118 (2d Cir. 2002)). It is well-settled that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Thus, to the extent Hamilton's claim is for constructive amendment of the indictment, the claim fails. *Accord Johnson*, 83 F. Supp. 3d at 560; *Still v. Hastings*, No. 13-6226, 2015 WL 3934937, at *6 (D.N.J. June 26, 2015) ("Because the Fifth Amendment right to a grand jury indictment does not apply to state criminal prosecutions, federal courts conducting habeas review are confined 'to a determination of whether due process requirements have been satisfied.'" (footnote omitted)).

Moreover, even if the Court were to construe Hamilton's claim as one arising the due process clause based on the trial court's erroneous jury instructions on Counts Fifteen, Sixteen, and Seventeen, it still lacks merit. Habeas review of jury instructions is limited to those instances where the instructions violated a Hamilton's due process rights. *Echols v. Ricci*, 492 F. App'x 301, 312 (3d Cir. 2012) (citing *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991) (holding that "[t]he

only question for us is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.")); *see also Middleton v. McNeil*, 541 U.S. 433, 437 (2004). A Hamilton's due process rights are violated where the instruction "operated to lift the burden of proof on an essential element of an offense as defined by state law." *Echols*, 492 F. App'x at 312 (quoting *Smith v. Horn*, 120 F.3d 400, 416 (3d Cir. 1997)).

An error in the jury instructions is not ground for habeas relief if the error is harmless. *Pagliaccetti v. Kerestes*, 581 F. App'x 134, 136 (3d Cir. 2014) (citing *Yohn v. Love*, 76 F.3d 508, 522 (3d Cir. 1996)). An error is harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). The effect of an allegedly erroneous jury instruction "must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146–47 (1973). Thus, the relevant question "is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 147.

Hamilton argues that the misleading nature of the jury instructions is evident from the jury's apparent inconsistent verdict—it acquitted Hamilton of the predicate offense for the compound weapons offenses. However, it has been well-settled by the Supreme Court that "inconsistent verdicts are constitutionally tolerable." *Dowling v. United States*, 493 U.S. 342, 353–54 (1990). This includes "verdicts that acquit on a predicate offense while convicting on the compound offense." *United States v. Powell*, 469 U.S. 57, 65 (1984). Indeed, the Supreme Court has instructed that "[t]he most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." *Id.* at 64–65 (quoting *Dunn v. United*

*States*, 284 U.S. 390, 393 (1932)). Accordingly, the Court cannot discern from the jury's apparently inconsistent verdict that the error in the jury instructions *actually* misled the jury as there are any number of reasons that the jury acquitted Hamilton of the predicate offense for Counts Fifteen, Sixteen, and Seventeen.

The Appellate Division's determination that the errors in the trial court's jury instructions on Counts Fifteen, Sixteen, and Seventeen were not capable of producing an unjust result was neither contrary to established federal precedent nor an unreasonable application of that precedent. As the Appellate Division observed, there was simply no evidence presented at trial that Hamilton distributed heroin in East Orange on June 25, 2004 at the time the weapons were seized. The trial court's instruction was clear that these charges related to the contraband seized at 12 Hawthorne Place in East Orange. Because the trial court's instructions were clear as to the conduct to which these compound offenses related, this Court cannot discern that the error in the jury instructions was so invasive to have rendered Hamilton's trial unfair. Accordingly, relief on this claim is denied.

### c. Ground Three – Erroneous Jury Instruction on Count Four

In Ground Three of the Petition, Hamilton alleges that his due process rights were violated as a result of the trial court erroneously charging the jury on Count Four of the indictment and that the trial court's error constituted a constructive amendment of the indictment. Count Four of the indictment charged as follows:

> [B]etween on or about June 24, 2004, and on or about June 25, 2004, at the City of Trenton, in the County of Mercer, elsewhere, and within the jurisdiction of this Court, knowingly or purposely did distribute a controlled dangerous substance, that is, heroin, in a quantity of five ounces or more including any adulterants or dilutants.

(ECF No. 34-2, at 15.) In the trial court's jury instructions on this count, it stated that Count Four

"involves the quantity of heroin that was seized by investigators at the 7-Eleven on Broad Street in Trenton." (ECF No. 34-44, at 39.) Hamilton contends, however, that no offense was committed at a 7-Eleven in Trenton and argues that the trial court's instructions combined two heroin transactions that took place between June 24, 2004 and June 25, 2004. (ECF No. 1, 28–29.) That is because Hamilton maintains that the conduct underlying the offense occurred on Overbook Avenue and Riverside Drive in Trenton, whereas the heroin referenced in the trial court's instructions was seized at a 7-Eleven in Hamilton, New Jersey. (*Id.*) This "combination" of the two offenses, Hamilton argues, constituted a constructive amendment of the indictment because the instructions made two offenses appear as one. (ECF No. 1, at 29.)

Hamilton first raised this claim in his First PCR Petition. (ECF No. 34-13, at 107–12.) The Superior Court denied the claim as procedurally barred under New Jersey Court Rule 3:22-4 because Hamilton failed to raise the claim on direct appeal and additionally held, without explanation, that the claim lacked merit. (ECF No. 34-14, at 101–05.) The Appellate Division affirmed that decision. (ECF No. 34-26, at 8.) Respondents argue that this claim is procedurally defaulted because the Appellate Division determined that it was procedurally barred under the New Jersey Court Rules.

A habeas claim is procedurally defaulted where "a state court declined to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement." *Lark v. Sec'y Pa. Dep't of Corrs.*, 645 F.3d 596, 611 (3d Cir. 2011) (quoting *Coleman v. Thompson*, 501 U.S. 722, 730 (1991)). Put differently, where the state court dismissed a Hamilton's federal claims pursuant to an "independent" and "adequate" state procedural ground, federal habeas corpus review is not available. *See id.* If, however, the state law ground was not "independent" and "adequate," a federal court may review Hamilton's claims on the merits. *Id.*

"A state procedural rule is an inadequate ground to bar federal review if it was not firmly established and regularly followed by the state courts at the time it was applied." *Id.* The Third Circuit has explained "that an adequate procedural ground is predicated on procedural rules that speak in unmistakable terms." *Cabrera v. Barbo*, 175 F.3d 307, 313 (3d Cir. 1999). Critically, "the procedural disposition must comport with similar decisions in other cases so there is a firmly established rule that is applied in a consistent and regular manner in the vast majority of the cases" and the rule must have been in place at the time of the state court procedural default. *Id.*

Procedural default may be excused where the Hamilton "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Cristin v. Brennan*, 281 F.3d 404, 412 (3d Cir. 2002) (quoting *Coleman*, 501 U.S. at 750).

The PCR Court determined that Hamilton's claim that the trial court erred in instructing the jury on Count Four was procedurally barred under New Jersey Court Rule 3:22-4 because the claim should have been raised on direct appeal. (ECF No. 34-14, at 103.) The Appellate Division affirmed that decision. (ECF No. 34-26, at 8–9.) New Jersey Court Rule 3:22-4 states that "[a]ny ground for relief not raised in the proceedings resulting in the conviction, . . . , or in any appeal taken in such proceedings is barred from assertion in a proceeding under this rule unless the court" finds that certain exceptions exist. N.J. Ct. R. 3:22-4(a). New Jersey Court Rule 3:22-4 is an independent and adequate state law ground. *See, e.g., Cabrera*, 175 F.3d at 313; *Egipciaco v. Warren*, No. 12-4718, 2015 WL 790108, at *3–4 (D.N.J. Feb. 25, 2015). Because this claim was barred under an independent and adequate state law ground, it is procedurally defaulted and habeas review is precluded unless Hamilton can demonstrate cause and prejudice for the default.

Hamilton argues in his Reply that this Court should "look beyond" his procedural default

of this claim because "trial defense counsel was ineffective for failing to notice [and] object to the faulty instructions that resulted in this amendment." (ECF No. 35-1, at 15–16.) Furthermore, Hamilton posits that "[a]n argument can also be made that had Hamilton had his chosen counsel . . . representing him at trial, this constructive amending of the indictment would have been caught and objected to." (*Id.* at 16.)

Cause that is sufficient to excuse a procedural default "will 'ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Cristin*, 281 F.3d at 420 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "Cause" generally "cannot be based on the mere inadvertence of the Hamilton or Hamilton's counsel to take an appeal." *Id.*; *see also Murray*, 477 U.S. at 486 ("[T]he mere fact that counsel failed to recognize the factual or legal basis or a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.") Nevertheless, ineffective assistance of counsel may constitute cause for procedural default, but only where the attorney's ineffectiveness rises to the level of a Sixth Amendment violation. *Cristin*, 281 F.3d at 420. Here, Hamilton has not demonstrated cause to excuse his procedural default of this claim. Hamilton has not demonstrated that his counsel was ineffective for failing to raise this claim on appeal and only points to the errors of trial counsel to support his argument that his default should be excused. This is insufficient to overcome procedural default. *See id.*

Nevertheless, for the sake of completeness, the Court will also consider the merits of Hamilton's claim that the trial court's instruction to the jury on Count Four violated his federal due process rights. For a Hamilton to be entitled to habeas relief based on an erroneous jury instruction, the ailing instruction must have "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637 (quoting *Kotteakos*, 328 U.S. at 776). To

determine whether an erroneous instruction violated the Hamilton's right to due process, the ailing instruction cannot be viewed in a vacuum and must be considered in the context of the entire charge. *Cupp*, 414 U.S. at 146–47.

The trial court's error in instructing the jury on Count Four did not violate Hamilton's due process right under the Fifth and Fourteenth Amendments. The alleged error in the jury instruction was the trial court's statement that the offense occurred at a 7-Eleven on South Broad Street in Trenton when, in fact, the two drug transactions on June 24 and 25, 2004 occurred on Overbrook Avenue and Riverside Drive in Trenton and at a 7-Eleven on Broad Street in *Hamilton, New Jersey*. While Hamilton argues that Count Four of the indictment related only to the drug transaction that occurred on Overbrook Avenue and Riverside Drive, it is clear from the trial record that the State understood Count Four to be based on the Hamilton transaction. In summation, the State stated that Count Four "deals with the delivery that was being made on the early morning of June 25th by Cashwell and Shameeka Melvin to Akeem Blue at the 7-Eleven where they were finally arrested on South Broad Street." (ECF No. 34-44, at 20–21.) Moreover, the language of Count Four encompasses the Hamilton transaction as Hamilton, New Jersey is located "in the County of Mercer, elsewhere, and within the jurisdiction of this Court."

To the extent the jury instructions were erroneous in that they stated that the conduct occurred at a 7-Eleven in Trenton, New Jersey, the error was harmless as it is clear from the trial court's instruction the conduct for which the charge referenced. The trial court's minor misstatement of fact did not "so infect[] the entire trial that the resulting conviction violates due process." *Estelle v. Mcguire*, 502 U.S. at 72. The jury was instructed by the trial court that "[r]egardless of what counsel said or I may have said recalling the evidence in this case, it is your recollection of the evidence that should guide you as judges of the facts." (ECF No. 34-44, at 30.)

The jury is presumed to have followed that instruction. *United States v. Givan*, 320 F.3d 452, 462 (3d Cir. 2003) ("[I]t is a basic tenet of our jurisprudence that a jury is presumed to have followed the instructions the court gave it."). Hamilton has not shown he is entitled to habeas relief on this claim and, accordingly, it is dismissed.

### d. Ground Four – Ineffective Assistance of Counsel

In Ground Four, Hamilton asserts he was denied the effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution. The right to counsel set forth in the Sixth Amendment is the right to the effective assistance of counsel and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *Id.* at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness." *Hinton v. Alabama*, 134 S. Ct. 1081, 1083 (2014) (citation omitted). To satisfy the prejudice prong, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693. To establish prejudice, the defendant must show that "there is a reasonable probability that the result of the [case] would have been different absent the deficient act or omission." *Hinton*, 134 S. Ct. at 1083.[5]

---

[5] Respondents argue that Petitioner's claims for ineffective assistance of trial counsel that were raised in his First PCR are procedurally defaulted because the PCR Court found them to be barred by New Jersey Court Rule 3:22-4(a) because the claims could have been raised on direct

### i. Failure to Ensure Hamilton's Alias was Properly Redacted

Hamilton first argues that his counsel was ineffective for failing to ensure that his alleged alias, "Black," was redacted from transcripts that were admitted at trial. A significant part of the investigation into Hamilton and his codefendants was wiretaps of certain cell phones. (ECF No. 34-40, at 11–12.) At trial, transcripts of the audio captured by the wiretap was admitted by the State. (*Id.* at 13.) Hamilton alleges that prior to trial, "the parties agreed to, and the Court also ordered that the alleged alias name 'Black' be redacted from the recorded voice transcripts." (ECF No. 1, at 30.) However, some of the transcripts admitted at trial included references to someone named "Black," who Officer Kiely testified was Hamilton. (*Id.* at 19.) Hamilton argues that his trial counsel should have objected to the admission of these transcripts because they were not properly redacted and were highly prejudicial to Hamilton. (*Id.*)

Despite determining that this claim was barred by New Jersey Court Rule 3:22-4 for failure to raise the issue on direct appeal, the PCR Court additionally addressed its merits. The PCR Court held that Hamilton's trial counsel was not ineffective for not objecting to the inclusion of Hamilton's alias, "Black," appearing in the transcripts. (ECF No. 34-14, at 110.) Indeed, the PCR Court noted that "[t]rial counsel vigorously cross-examined State witnesses about the identification

---

appeal but were not. While the trial court's dismissal of Petitioner's claims pursuant to New Jersey Court Rule 3:22-4 was, no doubt, an independent state law ground, it was not adequate. The New Jersey Supreme Court has instructed that "petitioners are rarely barred from raising ineffective-assistance-of-counsel claims on post-conviction review." *Cabrera*, 175 F.3d at 313 (quoting *State v. Preciose*, 609 A.2d 1280, 1284–85 (1992)). That is because, under New Jersey law, "an ineffective assistance of counsel claim usually cannot be raised on a direct appeal because a record will not be adequate to support the claim." *Id.* But, whether or not the record is adequate to the support the claim, a defendant is not required to bring such claims on direct appeal. *See State v. McQuaid*, 688 A.2d 584, 594 (N.J. 1997) ("This Court has also noted that the appropriateness of asserting ineffective assistance of counsel claims on PCR because such claims often cannot reasonably be raised on direct appeal or in prior proceedings."). Accordingly, the Court does not find Petitioner's ineffective assistance of counsel claims to be procedurally defaulted and will consider the merits of these claims.

of Hamilton as 'Black'" and called a witness to testify that "Black" did not refer to Hamilton. (*Id.* at 111.) Thus, because trial counsel "adequately challenged the State's witnesses about the identification of Hamilton as 'Black.'" (*Id.*)

The Court will not disturb this decision. Hamilton has not demonstrated either that his trial counsel's performance was deficient in failing to object to the admission of the unredacted transcripts nor has he shown that he was prejudiced by their admission. Whether Hamilton used the alias "Black" was a contested issue at trial on which Hamilton presented multiple witnesses and cross-examined the State's witnesses. Hamilton has similarly failed to demonstrate that he was prejudiced by any alleged deficiency of counsel—he cannot demonstrate that had the transcripts been redacted as apparently agreed there is a reasonable probability that the outcome of trial would have differed. Hamilton is not entitled to habeas relief on this claim.

### ii. Failure to Object to Jury Instructions that Allegedly Constructively Amended Counts Fifteen, Sixteen, and Seventeen

Hamilton next argues that his counsel was ineffective for failing to object to the jury instructions on Counts Fifteen, Sixteen, and Seventeen. Hamilton raised this claim in his First PCR and it was denied by the PCR Court.[6] (*See* ECF No. 34-14, at 112–14.) In addition to finding

---

[6]    Respondents argue that this claim is unexhausted because it was not raised to the Appellate Division or New Jersey Supreme Court. Before seeking relief in federal court, a state prisoner must "exhaust[] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). This "requirement is satisfied only if the petitioner can show that he fairly presented the federal claim at each level of the established state-court system for review," either on direct appeal or in collateral post-conviction proceedings. *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004). Once a petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied. *Picard v. Connor*, 404 U.S. 270, 275 (1971); *see also Castille v. Peoples*, 489 U.S. 346, 350 (1989). While the Court finds that this claim is unexhausted because it was not presented to the Appellate Division or New Jersey Supreme Court, it will nonetheless deny the claim on the merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Mahoney v. Bostel*, 366 F. App'x 368, 371 (3d Cir. 2010).

the claim to be procedurally barred as having been previously adjudicated on the merits by the Appellate Division, who denied Hamilton's underlying claim on direct appeal, the PCR Court found that Hamilton's trial counsel was not ineffective for failing to object to the jury instructions. (*Id.*) The PCR Court determined that Hamilton's claim failed under the second prong of *Strickland*; he could not demonstrate that he was prejudiced by his counsel's failure to object to an error in the jury instructions that "did not produce an unjust result." (*Id.* at 114.)

This Court will not disturb the decision of the PCR Court. As the Court held above, Hamilton's substantive claim related to the jury instructions on Counts Fifteen, Sixteen, and Seventeen lacks merit. For the same reasons, Hamilton cannot demonstrate that, even if counsel was deficient for not objecting to the error in the jury instructions, he was prejudiced by that error. Hamilton does not allege that the outcome of the trial would have differed in any way if his counsel would have objected to the error in the jury instructions. Accordingly, relief on this claim is denied.

### iii. Failure to Object to Constructive Amendment of Count Four

Hamilton asserts that his counsel was ineffective for failing to object to the trial court's instruction on Count Four, which he argues constructively amended the indictment. As the Court discussed in its analysis of Hamilton substantive claim on this issue, Hamilton alleges that the trial court erroneously instructed the jury on this offense by stating that the offense occurred at a 7-Eleven in Trenton, New Jersey. Hamilton maintains that that conduct underlying Count Four occurred on Overbrook Avenue and Riverside Drive in Trenton. *See supra* at 19. In fact, Hamilton argues that no illegal conduct occurred at a 7-Eleven in Trenton as his accomplices were arrested at a 7-Eleven in Hamilton, New Jersey.

The PCR Court denied this claim because it found that the "jury instructions and verdict

sheet were not so misleading as to prejudice the Hamilton." (ECF No. 34-13, at 107–08.) In support of its finding, the PCR Court reviewed the evidence presented by the State in support of Count Four and observed that "[t]he distributions in Trenton and Hamilton took place close in time and place, although they occurred on two different days. The jury did not ask the court to clarify its instructions with regard to Count Four, specifically in what towns the defendants distributed heroin and where they were apprehended and arrested." (*Id.*) As such, the PCR Court held that Hamilton could not meet the second prong of *Strickland* because there was no showing that Hamilton "was prejudiced by trial counsel's failure to object to the jury instructions or verdict sheet in Count Four of the Indictment." (*Id.*)

The PCR Court's decision was not unreasonable. Hamilton's counsel was not deficient by not objecting to the jury instructions on Count Four because it is clear from the indictment that the Hamilton distribution fell under the conduct as set forth in the indictment. Under New Jersey law, a charge in an indictment "must sufficiently identify the criminal event to enable the accused to defend and to defeat a subsequent prosecution for the same offense; hence the indictment must allege all the essential facts of the crime." *State v. Lamb*, 310 A.2d 102, 105–06 (N.J. Sup. Ct. App. Div. 1973). Nevertheless,

> [t]he proofs developed need not adhere strictly to the allegations of the indictment. If the proofs presented substantially adhere to that outlined in the indictment and the indictment supplies sufficient information to apprise defendant of the actual charge against him, thus avoiding any possible prejudice, and protects him against a subsequent prosecution for the same offense, the variance will be deemed immaterial.

*Id.* at 106. Here, as the Court explained *supra*, the terms of Count Four of the Indictment encompassed conduct that occurred in Hamilton, New Jersey, which is situated "in the County of Mercer, elsewhere, and within the jurisdiction of this Court." Hamilton's counsel was not deficient

in not objecting to the trial court's instruction on Count Four because it was apparent from the State's proofs at trial that it sought to base its case on the conduct that occurred in Hamilton, New Jersey between June 24, 2004 and June 25, 2005. No "fatal variance" of the indictment had occurred and, thus, there was no reason for Hamilton's counsel to raise any objection. Habeas relief on this claim is denied.

### iv. Failure to Object to the Admission of Other Crimes Evidence

Hamilton also argues that his counsel was ineffective because he failed to object to the admission of other crimes evidence at trial. Specifically, Hamilton argues that his counsel should have objected to the admission of heroin ("Exhibit S-6") that was seized when his accomplices were arrested on June 25, 2004 at a 7-11 in Hamilton, New Jersey. (ECF No. 1, at 31.) The PCR Court denied this claim because it found that

> Exhibit S-6 and other evidence of drug distribution in Hamilton Township was part of the Indictment. The language of the Indictment states that the Hamilton was indicted for the distribution of heroin on June 24 and June 25, 2004, in Trenton, elsewhere, and within the jurisdiction of the Court. Although Hamilton Township is not named specifically in the indictment, the indictment states that he is also charged with distributing heroin "elsewhere, and within the jurisdiction of this Court[.]" Therefore, the distribution which took place in Hamilton Township is included in this Count of the Indictment.

> The court finds that trial counsel was not ineffective for failing to object to S-6 being moved into evidence, as it was not evidence of other crimes, rather it was intrinsic to Count Four of the Indictment.

(ECF No. 34-14, at 116 (alteration in original)).

The PCR Court's holding was not unreasonable and will not be disturbed. As discussed above, the Hamilton transaction was included in Count Four of the indictment. The admission of the heroin seized as part of that transaction and arrest was not other crimes evidence but evidence of the crime for which Hamilton was charged. Habeas relief on this claim is denied.

### v. Ineffective Assistance of Sentencing, Appellate, and PCR Counsels for Failing to Challenge the State's Motion for Extended Term Sentencing as Time Barred

Finally, Hamilton alleges that his sentencing, appellate and PCR counsels were all ineffective in failing to object to the State's motion for extended term sentencing as untimely. Hamilton argues that the New Jersey court Rules required that the State's motion for extended term sentencing be filed within 14 days of the return of the verdict against Hamilton. (ECF No. 1, at 32.) The State, however, did not file its motion until October 26, 2007, nearly a year after the jury's verdict was entered. (*Id.*) Because Hamilton's sentencing counsel failed to object to the motion on timeliness grounds, and because his appellate counsel did not raise this issue on appeal, he contends they were ineffective in violation of the Sixth Amendment.

Hamilton raised this claim in his Second PCR. However, the PCR Court dismissed the Second PCR as procedurally barred under New Jersey Court Rule 3:22-4(b)(2) as a second or subsequent petition. The Appellate Division affirmed that decision. Respondents argue that these claims are procedurally defaulted because the PCR Court and Appellate Division held that they were procedurally barred.

First, to the extent Hamilton claims that his PCR counsel was ineffective, his claim is not cognizable in a habeas proceeding. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

Hamilton's claims for ineffective assistance of counsel for his sentencing and appellate counsel's failure to challenge the timeliness of the State's extended term motions are procedurally defaulted. Under New Jersey Court Rule 3:22-4(b), a second or subsequent petition shall be dismissed unless it is timely under the Court Rules and it alleges on its face:

(A)    That the petition relies on a new rule of constitutional law, made retroactive to defendant's petition by the United States Supreme Court or the Supreme Court of New Jersey, that was unavailable during the pendency of any prior proceedings; or

(B)    That the factual predicate for the relief sought could not have been discovered earlier through the exercise of reasonable diligence, and the facts underlying the ground for relief, if proven and viewed in light of the evidence as a whole, would raise a reasonable probability that the relief sought would be granted; or

(C)    That the petition alleges a prima facie case of ineffective assistance of counsel that represented the defendant on the first or subsequent application for post-conviction relief.

As set forth *supra*, New Jersey Court Rule 3:22-4 is an independent and adequate state law ground. *See, e.g.*, *Cabrera*, 175 F.3d at 313; *Egipciaco*, 2015 WL 790108, at *3–4. Because "the last state court rendering a judgment in the case 'clearly and expressly' state[d] that its judgment rest[ed] on a state procedural bar," it is procedural default absent a showing of cause and prejudice. *See Harris v. Reed*, 489 U.S. 255, 263 (1989) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)). Hamilton did not address Respondent's argument that this claim is procedurally defaulted in his reply and, thus, he has not established either cause or prejudice.

Despite finding these claims to be procedurally defaulted, the Court will comment briefly on their merits. New Jersey Court Rule 3:21-4(e) requires that the State file a motion for extended term sentencing "within 14 days of the entry of defendant's guilty plea or of the return of the verdict." The 14-day filing requirement may be extended "for good cause shown." *Id.* While there is no doubt that the State's motion was untimely filed, Hamilton's trial and appellate counsel were not ineffective for failing to challenge the motion on timeliness grounds. Hamilton has failed to show that he was prejudiced by the failure of his counsel to raise this argument. Indeed, it is apparent to the Court that had such a challenge been raised, it would have been denied. Under similar circumstances, the Appellate Division has found good cause for filing an out-of-time

motion for extended term sentencing where the defendant absconded the jurisdiction during the pendency of trial. *See State v. Lige*, No. 03-03-383, 2007 WL 4061656 (N.J. Super. Ct. App. Div. Nov. 19, 2007) ("Here, there was good cause for extending the time for filing a motion for an extended term because defendant chose to absent himself from trial and timely sentencing."). Moreover, on Hamilton's motion to correct an illegal sentence, brought after his Second PCR, the Superior Court held that the State had good cause for filing the untimely motion because "Defendant absconded the jurisdiction of the court during his criminal trial, leaving the State without the ability to serve a notice of an extended term upon him." (ECF No. 34-30, 26–27.) This Court agrees and because Hamilton cannot demonstrate that a challenge to the motion on timeliness grounds would have succeeded, he cannot show he was prejudiced by any alleged deficiency of counsel. Accordingly, this claim is denied.

## V.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A Hamilton satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Here, Hamilton has failed to make a substantial showing of the denial of a constitutional right. Thus, no certificate of appealability shall issue.

## VI.    CONCLUSION

For the above reasons, the Court will dismiss the Petition with prejudice. A certificate of

appealability will not issue.  An appropriate order follows.

_Peter G. Sheridan_  9/13/19
PETER G. SHERIDAN
United States District Judge